## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re:<br><br>Gina L. Toner,<br><br>           Debtor. | Case No.:  11-30151 GFK<br><br><br><br>Chapter 7 |

### NOTICE OF HEARING AND MOTION FOR RELIEF FROM STAY

1.      TCF National Bank ("Movant"), a secured creditor of the above-referenced bankruptcy estate, by its undersigned attorney, moves the Court for the relief requested below, and gives notice of hearing herewith.

2.      The Court will hold a hearing on this motion at 10:30 a.m. on February 22, 2011, before the Honorable Gregory F. Kishel at United States Courthouse, Courtroom 2-A, Second Floor, 316 North Robert Street, St. Paul, MN 55101, or as soon thereafter as counsel may be heard.

3.      Any response to this motion must be filed and served by delivery not later than February 17, 2011, which is five days before the time set for the hearing (including Saturdays, Sundays and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING**.

4.      This motion is filed pursuant to Bankruptcy Rule 4001 and Local Rules 9013-2 and 4001-1 and Movant requests relief from the automatic stay of 11 U.S.C. § 362(a) with respect to certain property subject to Movant's valid interest.

5.     This case was filed as a voluntary case under Chapter 7 of the United States Bankruptcy Code, and the case is now pending in this Court.  This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Rule 1070-1, Fed. R. Bankr. P. 5005 and applicable rules.  This is a core proceeding.

6.     By Consumer Loan Mortgage dated August 23, 2004, in the original principal amount of $166,875.00 (the "Mortgage"), Movant acquired a mortgagee's interest in the following real property (the "Property"), to wit: Lot 3, Block 3, Sun-Ray Terrace Addition No.1, Ramsey County, Minnesota,  and commonly known as 2208 Conway Street, St. Paul, Minnesota 55119.

7.     The Mortgage was filed for record in the offices of the Registrar of Titles for Ramsey County on September 9, 2004 as Document No. 1835181.  A copy of the Mortgage is attached hereto as **Exhibit A**.

8.     TCF National Bank is the original holder of the Mortgage.

9.     There is a delinquency with respect to the pre-petition monthly Mortgage payments of $1,333.78 due for the months of December 2010 and January 2011, for a total delinquency of $2,667.56,  plus interest and late charges. Pursuant to Local Rule 4001-1, attached as **Exhibit B** is a breakdown of the loan history from the date of the default to the date of the filing of this Motion.

10.     Debtor is also delinquent in payment of 2010 property taxes in the amount of $2,266.56.

11.     A copy of the tax-assessed value of the Property from Ramsey County Property Records is attached hereto as **Exhibit C.**

2

12.     The outstanding balance due Movant under the terms of the Mortgage is

$172,057.10.

13.     Citifinancial holds a second mortgage on the Property.  The amount due to

Citifinancial under the terms of the second mortgage as of the case filing date was $13,263.00,

according to the schedules filed in this case.

14.     There are attorney fees and costs which are unbilled to Movant which are not yet

due from the Debtor.

15.     Movant does not have, and has not been offered, adequate protection of its

interest in the Property.  The value of the Property is substantially less than the total amount of

the encumbrances on it.  Debtor has no equity in the Property and, in view of the fact that this is

a Chapter 7 liquidation proceeding, the Property is not necessary for an effective reorganization.

Moreover, Debtor's failure to make payments to Movant when due, or otherwise provide Movant

with adequate protection of its interest in the Property constitutes cause, within the meaning of

11 U.S.C. § 362(d)(a), entitling Movant to relief from the automatic stay.

16.     If testimony is necessary as to any facts relevant to this motion, Cris Sitz, a

Bankruptcy Specialist of Movant, 801 Marquette Avenue, Minneapolis, Minnesota, will testify

on behalf of Movant.

WHEREFORE, Movant, respectfully moves the Court for an order modifying the

automatic stay of §362(a) so as to permit Movant to foreclose its Mortgage on the Property,

waiving Fed. R. Bankr. 4001(a)(3) to make the order effective immediately and for such other

relief as may be just and equitable.

Dated:  February 2, 2011.                    **FOLEY & MANSFIELD PLLP**

BY: /e/ Jeffrey D. Klobucar _____

        Jeffrey D. Klobucar (#389368)
        250 Marquette Avenue, Suite 1200
        Minneapolis, MN  55401
        Telephone:  (612) 338-8788
        Fax:  (612) 338-8690

        Attorneys for TCF National Bank

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re:<br><br>Gina L. Toner,<br><br>                      Debtor. | Case No.:  11-30151 GFK<br><br><br><br>Chapter 7 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF FROM STAY

TCF National Bank ("Movant") submits this memorandum of law in support of its motion for relief from the stay in the above-entitled matter.

### FACTS

Movant holds a valid, duly perfected Mortgage on real property owned by the Debtor. On the date this case was filed, the Debtor was delinquent in respect of payments due under the note and Mortgage. Since this case was filed, the Debtor has made no payments to Movant.

### ARGUMENT

Under Section 362(d)(1) of the Bankruptcy Code, relief from the automatic stay shall be granted upon request of a creditor "for cause, including the lack of adequate protection of an interest in property of such [creditor]."  11 U.S.C. § 362(d)(1).  The Debtor in this case has failed to make the payments required by the note and Mortgage.  The Debtor has not otherwise provided Movant with adequate protection of its interest in the property.  Such circumstances constitute cause, within the meaning of Section 362(d)(1), justifying relief from the stay.  *United States Assn. of Texas v. Timbers of Inwood Assoc., Ltd*. (*In re Timbers of Inwood Assoc. Ltd*.), 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d (1988).

Pursuant to Section 362(d)(2) of the Bankruptcy Code, relief from the stay is also appropriate where Debtor has no equity in the subject property and the property is not necessary to an effective reorganization.  11 U.S.C. § 362(d)(2).  *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984).  In the present case the balance due Movant on the note exceeds the fair market value of the Property.  Clearly, the Debtor has no equity in the Property.  Because this is a Chapter 7 case, the property is not necessary to an effective reorganization.

Accordingly, Movant is entitled to an order terminating the stay and authorizing it to foreclose its Mortgage on the Property.

Dated: February 2, 2011                    **FOLEY & MANSFIELD PLLP**

                                BY: /e/ Jeffrey D. Klobucar _____
                                        Jeffrey D. Klobucar (#389368)
                                        250 Marquette Avenue, Suite 1200
                                        Minneapolis, MN  55401
                                        Telephone:  (612) 338-8788
                                        Fax:  (612) 338-8690

                                        Attorneys for TCF National Bank

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.: 11-30151 GFK |
| Gina L. Toner, | |
| Debtor. | Chapter 7 |

## VERIFICATION

I, Cris Sitz, am a Bankruptcy Specialist for Movant and I declare, under penalty of

perjury, that the foregoing is true and correct to the best of my knowledge, information and

belief.

Executed on: _2/2/11_ . .            Signed:_____

01/19/2011 14:23 FAX  6512288092

532600

Registrar of Titles, Ramsey, MN
Date Filed: 9/9/2004          1:00 PM
As Doc #: 1835181
On CT # ('s):
532600,

RAMSEY COUNTY
Receipt No:95909    Date: 9/2/2004
Registration tax hereon of    $400.50    Paid
MN Conservation Fund M.S. 473H  $5.00 Paid
Dorothy A. McClung, Auditor by Cpstadler

After recording, please return to:
TCF National Bank
Attn: File Review  002-01-P
101 E 5th Street, Suite 101
St. Paul, MN  55101

## CONSUMER LOAN MORTGAGE

(1)

**TCF NATIONAL BANK**                          Account Number: ▓▓▓▓▓
**MINNESOTA CONSUMER LENDING DEPARTMENT**

NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, THE MAXIMUM PRINCIPAL
INDEBTEDNESS SECURED BY THIS MORTGAGE IS
ONE HUNDRED SIXTY SIX THOUSAND EIGHT HUNDRED SEVENTY FIVE DOLLARS AND 00 CENTS
Dollars ( $166,875.00          ).
This CONSUMER LOAN MORTGAGE ("Mortgage") is made this  23rd   day of  August , 2004          , by
GINA L TONER
Unmarried                          whose address is
2208 CONWAY ST ST PAUL MN 55119                          (the "Borrower"), who
grants, conveys, mortgages and warrants to TCF National Bank, a national banking association, 801
Marquette Avenue, Minneapolis, MN  55402  (the "Lender"), land and property in
Ramsey            County, Minnesota, described as:
SEE ATTACHED                          1615641
                          RETURN TO:
                          GENERAL AMERICAN CORP
                          BOX 70

street address: 2208 CONWAY ST ST PAUL MN 55119
property identification no. 7001615641
together with all buildings, improvements, and fixtures on the property, whether now on the property or
added in the future, and all easements and other rights that pertain to the property (collectively the
"Property").  This Mortgage secures performance and payment under the terms of this Mortgage and
Borrower's note dated the same date as this Mortgage in the principal amount of
ONE HUNDRED SIXTY SIX THOUSAND EIGHT HUNDRED SEVENTY FIVE DOLLARS AND 00 CENTS
Dollars ( $166,875.00          ), subject to any written amendments to the note agreed to by Lender and
Borrower ("Note").  In addition to the indebtedness due under the Note, this Mortgage secures Protective
Advances which may be in excess of the maximum principal amount stated above with interest thereon
and any other charges due under the Note  (collectively "Debt") and the performance of any covenants
and agreements of the Borrower contained herein.  "Protective Advance" is defined as a payment made
by Lender for performance of covenants of Borrower pertaining to insuring or preserving the Property
upon Borrower's failure to perform.  The full Debt, if not paid earlier, is due and payable on  09/07/2034 .
☒  If the box preceding this sentence is checked, the interest rate under the Borrower's Note is variable
and can change daily, as described in the Note.

**Borrower promises and agrees:**

1.  To keep the Property in good repair, and to also comply with all laws and ordinances, which
    affect the Property.
2.  To pay all taxes, assessments, and water bills levied on the Property, and any other
    amounts which could become a senior Security Interest.  "Security Interest" includes any
    lien, mortgages or other encumbrance.
3.  To perform all obligations under any Security Interest on the Property.  As of the date hereof,
    there exists no other Security Interest on the Property, other than as disclosed to Lender on
    the title insurance commitment or property report or other title evidence obtained by Lender
    prior to accepting this Mortgage, or on Borrower's loan application.
4.  To keep the Property insured against fire, windstorm, flood, and such other hazards as
    Lender may require, in an amount and manner acceptable to Lender, and with the proceeds
    made payable in the policies to Lender as mortgagee, and to deliver such proof of insurance
    as Lender may require.  Borrower may obtain insurance from the insurance company of
    Borrower's choice as long as the insurance company is reasonably acceptable to Lender.
    Lender will apply any insurance proceeds to pay the Debt, unless Lender agrees in writing
    that the proceeds can be used differently.  If Lender uses the proceeds to reduce the Debt,
    Borrower will still have to make regular monthly payments until the Debt is satisfied.  If
    Borrower fails to keep the Property insured, Lender may, but is not required to, obtain such
    insurance to protect Lender's interest.  Such insurance obtained by Lender may not protect
    Borrower's equity interest in the Property.  Lender is not required to obtain the lowest cost
    insurance that might be available.
5.  That if all or part of the Property is condemned or taken by eminent domain, Borrower
    directs the party condemning or taking the Property to pay all of the money to Lender.
    Lender will apply the money to pay the Debt, unless Lender agrees in writing that the money
    can be used differently.  If Lender uses the money to reduce the Debt, Borrower will still
    have to make regular monthly payments until the Debt is satisfied.

**EXHIBIT**
**A**

099027    page 1 of 3    5/03

1 of 4

6. That if Borrower fails to pay or perform any of Borrower's obligations under this Mortgage, Lender may pay or perform such obligations. Any amount so paid and the cost of any title search and report made after any Default, may be added to the Debt.

7. That the term "Default" means (a) Borrower's failure to comply with the terms of this Mortgage; or (b) Borrower's failure to comply with the terms of the Note; or (c) Borrower's failure to comply with the terms of any Security Interest having priority over this Mortgage.
   The term "Lender" includes Lender's successors and assigns, and the term "Borrower" includes and binds the Borrower's heirs, personal and legal representatives, successors, and assigns of the undersigned. If this Mortgage is signed by two or more persons, the obligations and Security Interest granted by this Mortgage shall be cumulative and in addition to any other remedies provided by law. Each person who signs this Mortgage is responsible for keeping all of the promises made by Borrower. Lender may choose to enforce its rights against any person signing this Mortgage or against all of them. However, if someone signed this Mortgage, but signed the Note as collateral owner only, then that person will not be required to pay any amount under the Note, but will have signed only to grant, convey, mortgage and warrant any rights that person has in the Property. Also, Borrower may agree to extend, modify, forebear, or make any accommodations with regard to the Note or Mortgage without such collateral owner's consent.

8. That Lender shall have a power of sale. This means that if the Borrower is in Default, Lender is authorized and empowered to require immediate repayment of the Debt (called "acceleration"). Lender may (and is hereby authorized and empowered to) foreclose this Mortgage by action or advertisement, pursuant to the Statutes of the State of Minnesota in such case made and provided, power being expressly granted to sell the Property at public auction and convey the same to the purchaser in fee simple and, out of the proceeds arising from such sale, to pay the Debt with interest, and all legal costs and charges of such foreclosure and the maximum attorneys' fees permitted by law, with costs, charges, and fees the Borrower agrees to pay.
   However, before accelerating, Lender will send Borrower a written notice by certified mail which states:
   a. The promise that Borrower failed to keep or the representation or warranty that Borrower breached;
   b. The action Borrower must take to correct that failure;
   c. The date, at least 30 days away, by which the failure must be corrected;
   d. That if Borrower doesn't correct the failure or the representation or warranty that Borrower breached, Lender will accelerate, and if Borrower doesn't pay, Lender or another person may buy the Property at a foreclosure sale;
   e. That Minnesota law allows Borrower to reinstate the Mortgage after acceleration; and
   f. That Borrower may bring suit in court to argue that all promises were kept and to present any other defenses Borrower has to acceleration.
   We will send this notice or any other notice required by this Mortgage or by law to your address on file with us unless the law requires a different address.
   Lender need not send the notice if the promise Borrower failed to keep consists of Borrower's sale or transfer of all or a part of the Property or any rights in the Property without Lender's written consent. If Borrower does not correct the failure by the date stated in the notice, Lender may accelerate. If Lender accelerates, Lender may foreclose this Mortgage according to the Minnesota Statutes. Borrower gives Lender a power to sell the Property at a public auction. Borrower also agrees to pay Lender's attorneys' fees for the foreclosure in the maximum amount allowed by law.
   Lender may retain from the proceeds of the sale the amount of the Debt outstanding, the costs and charges of such sale, and reasonable attorneys' fees provided by Minnesota Statutes, and then render the surplus monies, if any, as required by law. In the event of any foreclosure or other sale under this Mortgage by virtue of judicial proceedings, advertisement, or otherwise, the Property may be sold in one parcel and as an entirety, or in such parcels, manner, or order as Lender in its sole discretion may elect.

9. That Borrower shall not assign or transfer the Property or any beneficial interest in the Property by deed, bond for deed, contract for deed, installment sales contract, escrow agreement, or other instruments, or in any manner whatsoever, without Lender's prior written consent. Lender's written consent is not required in the following circumstances:
   (a) the creation of a lien or other encumbrance subordinate to Lender's Security Interest which does not relate to a transfer of rights of occupancy in the Property (provided that such lien or encumbrance is not created pursuant to a contract for deed);
   (b) the creation of a purchase-money Security Interest for household appliances;
   (c) a transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety;
   (d) the granting of a leasehold interest which has a term of three years or less and which does not contain an option to purchase (that is, either a lease of more than three years or a lease with an option to purchase violates this provision);
   (e) a transfer, in which the transferee is a person who occupies or will occupy the Property, which is:
       (i) a transfer to a relative resulting from the death of Borrower;
       (ii) a transfer where the spouse or child(ren) becomes an owner of the Property; or
       (iii) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement by which the spouse becomes an owner of the Property; or
   (f) a transfer into an inter vivos trust in which Borrower is and remains the beneficiary and occupant of the Property, unless, as a condition precedent to such transfer, Borrower refuses to provide Lender with reasonable means acceptable to Lender by which Lender will be assured of timely notice of any subsequent transfer of the beneficial interest or change in occupancy.

10. That Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

11. That if the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charge collected or to be collected in connection with the loan exceeds the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding Debt or by making a direct payment to Borrower. If a refund reduces the Debt, the reduction will be treated as a partial prepayment, without any prepayment charge under the Note.

12. That this Mortgage, and any actions arising out of this Mortgage, are governed by Minnesota law to the extent not preempted by federal law. If any provision of this Mortgage is found to be unenforceable, all other provisions will remain in full force and effect. Lender's failure to exercise any right or remedy under this Mortgage will not waive Lender's rights in the future.
13. That Borrower gives up the homestead exemption right for all claims arising out of this Mortgage. This includes Borrower's right to demand that property other than Borrower's homestead that has been mortgaged to Lender be foreclosed before the homestead is foreclosed. Under the homestead exemption law, Borrower's homestead is usually free from the claims of creditors.

**Riders.** The following Riders are to be executed by the Borrower:
☐ Condominium Rider    ☐ Planned Unit Development Rider    ☐ Balloon Rider

Borrower shall be given one conformed copy of the Note and this Mortgage.

BY SIGNING BELOW, BORROWER HAS SIGNED AND DELIVERED THIS MORTGAGE AS OF THE DATE FIRST WRITTEN ABOVE.

Borrower:

_Gina L. Toner_
(signature)                                         (signature)

GINA L TONER
(type or very clearly print name)          (type or very clearly print name)

STATE OF MINNESOTA          )
                            ) ss.
COUNTY OF RAMSEY           )

The above instrument was acknowledged before me this 23rd day of August, 2004, by GINA L TONER Unmarried

SUSAN K. GIESEKE
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES
JANUARY 31, 2005.

NOTARY PUBLIC _____ County,
My commission expires:

This instrument was drafted by:
TCF National Bank
Consumer Lending Department
801 Marquette Avenue
Minneapolis, MN 55402

1835181

SCHEDULE "A"

LOT 3, BLOCK 3, SUN-RAY TERRACE ADDITION NO. 1 RAMSEY COUNTY, MINNESOTA.

TORRENS PROPERTY, CERTIFICATE NO. 532600

TAX ID# 35-29-22-41-0040

4

REAL ESTATE AND NON-REAL ESTATE SECURED AND UNSECURED          **TCF NATIONAL BANK**
FIXED OR VARIABLE RATE NOTE & SECURITY AGREEMENT
CLOSED END

Borrower(s): GINA L TONER                        Co-Borrower(s):
Date of this Agreement: ___08/23/04___    Account Number: _____

**Definitions.** This Note and Security Agreement ("Agreement") states the terms of your loan with us. By signing below, you agree to all the terms of this Agreement. Only those boxes that are checked apply. In this Agreement, the words "you" and "your" mean the Borrower and all persons signing this agreement as Co-Borrowers. The words "we", "us", "our" and "TCF" mean TCF National Bank, 801 Marquette Ave., Minneapolis, MN 55402 and its successors and assigns. "Successor" means a legal entity or person that by law succeeds to the legal rights and obligations of TCF. "Assigns" means an entity or person to whom TCF assigns its rights under this Agreement.

**Your Promise to Pay.** To repay the loan we have made to you, you promise to pay us the loan amount (the "principal") plus interest on the unpaid principal balance outstanding from time to time. We may also direct you to pay someone else (this means the Agreement is payable to us or our order). All payments must be made at the address indicated on your statement of payment coupon or at any other address we give you written notice of ("Payment Address"). All payments must be made in U.S. Dollars. Payments made at or delivered to any address other than the Payment Address will not be considered made until received at the Payment Address. The initial principal amount of this loan is $ _186,675.00_ ("Interest Start Date"). We will begin charging interest on __08/27/04__ ("Interest Start Date").

**Interest Rate.** You will pay us interest on the unpaid principal balance at the.
☐ A fixed annual interest rate of _____ %.
☒ A variable annual interest rate that is the published index rate ("Index Rate") described below plus ___740___ percentage points (the "Margin"). At the end of each month, we figure the interest you owe for the month. The annual interest rate in effect for each month will be based on, and change according to, the Index Rate as described below. The annual interest rate is divided by 365 (366 in a leap year) to determine a daily interest rate. The daily interest rate is multiplied by the outstanding principal balance of your loan at the end of each day. The outstanding principal balance of your loan is figured by taking the principal balance of your loan at the beginning of each day, subtracting any reduction in the principal balance due to the application of payments or credits to your loan that occurred that day, and adding any amounts allowed by law to your principal balance that occurred that day. The interest you owe for the month is the sum of the interest you owe for each day of that month. The Index Rate in effect on the date of this Agreement is _4.500_ %. Therefore, the beginning annual interest rate is _5.240_ %.

The Index Rate that applies during a calendar month is the highest U.S. prime rate published in The Wall Street Journal (currently under the label "Money Rates") in that calendar month. If The Wall Street Journal index discontinues publishing the Index Rate, we will pick a new index rate and margin, and we will send you notice of the new index rate and margin. The new index rate will be the Index Rate and the new margin will be the Margin. The Index Rate may not be the lowest or best rate offered by us or other lenders.
*Minimum and Maximum Rate.* Your annual interest rate will never be less than _5.240_ %, no matter how much the Index Rate may decline. Points (as discussed below) and other finance charges other than interest are not included in calculating this minimum rate. Your annual interest rate will never be more than _21.750_ %, calculated as described below under "Maximum Annual Interest Rate."

☒ **Discount for Automated Clearing House Payments (ACH) from your TCF Checking or Savings Account.** The annual interest rate on your Agreement as described above has been reduced by one-quarter of one percentage point (.25%) from what it otherwise would have been because you have agreed to have your payments on your Agreement made by automatic withdrawal from a TCF Checking or Savings Account ("TCF Account"). If the automatic withdrawal is cancelled or the TCF Account is closed, your annual interest rate will be increased as of the date of automatic withdrawal cancellation or TCF Account closure by one-quarter of one percentage point (.25%). The annual interest rate increase will be determined by adjusting the Margin we add to or subtract from the Index Rate, as described above, by one-quarter of a percentage point (.25%) on the date of automatic withdrawal cancellation or TCF Account closure and for all subsequent annual interest changes (if your annual interest rate is a variable annual interest rate), or by adding one-quarter of one percentage point (.25%) to your annual interest rate (if your annual interest rate is a fixed annual interest rate). If your annual interest rate is a fixed annual interest rate, we will also change your monthly payment to the amount that would be large enough to ☒ repay the unpaid principal plus interest on the unpaid principal at the new increased fixed annual interest rate in full by the final payment due date, ☐ result in the same balloon payment on the final payment due date as your original payment schedule. We will give you at least 25 days notice of the change in payment before the new payment due date.

**Payment Schedule.** You agree to repay the principal plus interest at the Payment Address according to the following schedule:
☒ **Installment Loan.** ___359___ equal monthly payments of ___$921.81___, on _10/07/2004_, and on the _7th_ day of each succeeding month, beginning ___November 2004___ plus (b) one final payment of the remaining unpaid balance of this Agreement on _09/07/2034_. ☐ If checked, this final payment is a large balloon payment because you have selected ☐ monthly payments based on an amortization term longer than the term of this agreement ☐ monthly payments which result in a specific final payment you selected
☐ **Single Principal Payment Loan.** The principal together with all interest due and any other amounts owing on this Agreement are due and payable in one installment on _____.

The interest shown in the Finance Charge shown in the separate Truth-in-Lending Disclosure Statement that we give you and the payment schedule shown above are based on our estimate of the interest you will owe. For variable annual interest rate Agreements, if the Index Rate or annual interest rate changes, the interest you will actually pay will be different from our estimate and your payment will change as described under "Changes in Payment Schedule Due to Changes in Annual Interest Rate." For fixed annual interest rate Agreements, if the annual interest rate changes due to termination of automatic withdrawal from a TCF Account or the closure of a TCF Account, the interest you will actually pay will be different from our estimate and your payment will change as described above under "Discount for Automated Clearing House Payments ("ACH") from your TCF Checking or Savings Account." For both variable annual interest rate and fixed annual interest rate Agreements, if you make early or late payments, the interest you will actually pay will be different from our estimate because we continue to accrue interest on unpaid principal for each day any unpaid principal remains outstanding. This is true even if the Index Rate or annual interest rate does not change. For fixed annual interest rate Agreements, your last payment will be adjusted up or down to make up for any difference due to early or late payment. For variable annual interest rate Agreements, your last payment will be adjusted up or down to make up for any difference due to early or late payment since your last payment change, and any difference due to early or late payment for prior years will be reflected in each payment change described under "Changes in Payment Schedule Due to Changes in Annual Interest Rate." We may apply each of your payments first to late charges, returned payment charges, and any other charges you owe us, then to the interest you owe, then to reduce the principal (including any points and other charges you have financed).

☒ **Maximum Annual Interest Rate.** If this is a variable annual interest rate Agreement, the maximum annual interest rate on your Agreement is _21.75_ %. We will calculate this maximum annual interest rate as provided under Minnesota Statutes Section 47.59.

**TCF's Right to Cancel the Agreement.** You have provided us with certain information regarding the real property securing this Agreement. TCF may cancel this Agreement if it discovers any of the following types of information provided to us by you in the application or on the Affidavit of Borrower or Owner is inaccurate, fraudulent or misleading in any manner, including, but not limited to omissions, fraudulent statements and errors. This includes information regarding: the ownership of any real property securing this Agreement; any mortgages, liens or other encumbrances on any real property securing this Agreement; non-payment of any items which could create liens or other encumbrances on any real property securing this Agreement; the legal description of any real property securing this Agreement; and any contracts or other agreements affecting any real property securing this Agreement.

By signing below, you state that you have received a complete copy of this Agreement. By signing below, you also state that you have read and agreed to all the terms of this Agreement, including the terms on pages 2, 3, 4, 5, 6, 7 and 8 of this Agreement. You agree that the terms on pages 2, 3, 4, 5, 6, 7 and 8 are part of this Agreement.

_Gina L. Toner_
Borrower  GINA L TONER                          Co-Borrower

You agree that this Agreement is subject to arbitration as set forth in a separate arbitration agreement. You also acknowledge you received and agreed to the separate arbitration agreement on this date.

X_____ Initials              _____ Initials

                      099009         page 1 of 8              07/04

**X Changes In Payment Schedule Due to Changes In Annual Interest Rate.** If this is a variable annual interest rate Agreement, changes in the annual interest rate will affect your payments as follows:
Your monthly payment will change annually on each anniversary of your first payment due date (each anniversary of your first payment due date is called a "Payment Change Date"). For each Payment Change Date, we will determine the amount of the monthly payment that would be large enough to repay the unpaid principal plus interest on that amount in full by the final payment due date. We will use the annual interest rate in effect on the date shown in the notice of payment change (referred to below) to make this calculation. If the annual interest rate changes after the last Payment Change Date before your final scheduled payment date, your final payment will be adjusted so that the unpaid principal and interest you owe will be paid in full. We will give you at least 25 days (but no more than 120 days) notice of any change in your payment. The annual interest rate in effect on the date 120 days before the scheduled date the final payment is due will be the rate we charge after that date.
**Full Payment of this Loan.** You have the right to prepay all or part of the principal at any time. If you pay only part of the principal before it is due, you will still have to make the scheduled monthly payments until this Agreement is paid in full. There is no additional charge or fee for prepayment.
**Points and Other Prepaid Finance Charges.** In addition to the interest you pay, we may have charged you "points" (sometimes called "loan discount") and other prepaid finance charges in this transaction. For real estate secured Agreements, the points and other prepaid finance charges we charge are shown on the HUD settlement statement you receive in connection with this Agreement. For unsecured and non-real estate secured Agreements, the points and other prepaid finance charges are shown on the Itemization of Amount Financed.
If you prepay your loan in full, you may be entitled to a refund of part of the points and other prepaid finance charges paid to us. We will give you a refund to the extent that the annual percentage rate yield on your loan would exceed 21.75% taking into account the prepayment. We will make this calculation according to Minnesota Statutes Section 47.59. Points and other prepaid finance charges will be included as interest for this purpose, except the Administrative Fee, if any, provided for on page 3. We will not make refunds of less than five dollars.
**Late and Returned Payment Charges.** If we do not receive a required payment in full on or before the 10th day after the due date, we will charge you a late charge equal to 5% of the amount of the payment or $6.24, whichever is more. If the 10th day is a Saturday, Sunday or Legal Holiday, we will not charge you a late charge if we receive the payment in full on the next day that is not a Saturday, Sunday or Legal Holiday. We apply payments in the order in which they are due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. We will charge you $20 for each check, automatic payment withdrawal request or other payment instrument that is returned unpaid. We will not assess the late charge on the single principal payment due on a single principal payment loan.


## SECURITY

To protect us if you default under this Agreement, or any change, extension or renewal of this Agreement.
**X Mortgage.** You give us a separate mortgage covering the real property located at:
    2208 CONWAY ST  ST PAUL MN 55119
We will not release the mortgage until you have paid us everything you owe under this Agreement. The mortgage contains additional terms regarding your and our duties and obligations.
☐ **Security Agreement.** You give us a security interest in the following property ("collateral"):



This security agreement does not apply to personal property that is your principal dwelling if we fail to provide any required notice of right to rescind.

**Accessions and Proceeds.** To protect us if you default under this Agreement and any changes, extensions, and renewals of this Agreement, you also give us a security interest in any "accessions" to and "proceeds" of any collateral described above which will all be included in the term "collateral". "Accessions" generally means any goods installed in or attached to the collateral. "Proceeds" generally means any money or property due you from the loss, destruction or sale of the collateral. Accessions and proceeds are defined in Article 9 of the Uniform Commercial Code.
**Ownership of the Collateral.** You represent that you and any Collateral Owner signing this Agreement have full ownership of all the collateral. You represent that no one else has an interest in the collateral, including a lien, other than an acceptable interest as to which we have been advised in writing in our inspection of title to the collateral (for example, a first-lien on your car that is already noted on the title). You agree not to sell or give anyone else an interest in any of the collateral that is personal property without written permission from us. You will keep such collateral free from all other claims (such as taxes and liens). You agree to assist us and sign any documents necessary to perfect our security interest in the collateral (such as ensuring financing statements or certificate of title documents are filed on the collateral).
**Care of the Collateral.** You will:

1.    Keep all the collateral in good repair and working order;
2.    Replace broken and worn parts;
3.    Allow us to inspect the collateral as we wish; and
4.    Notify us in writing immediately of any loss or damage to the collateral.

**Insurance.** You will keep the collateral insured against:

1.    Fire (including extended coverage);
2.    Theft and collision (for motor vehicles); and
3.    Any other risks we name.

You may buy the insurance from anyone you want, but the insurance company and the amount of the insurance must be acceptable to us. You will have the insurance company name us in the policy as a secured party, and you will give us a copy of the policy. You will instruct each issuer of an insurance policy to pay any claims directly to us and to notify us in writing at least 30 days before ending coverage. You assign any insurance payments to us as additional security.
**Notice:** If you do not provide us with evidence of the insurance coverage required by your Agreement with us promptly after we ask for this evidence, we may purchase insurance at your expense to protect our interests in the collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by your Agreement with us. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your principal balance. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.
**Location of Property.** You will not keep personal property collateral in any county or state unless a financing statement has been filed there showing us as the secured party, if one is required to be filed there to perfect our security interest. You will not remove personal property collateral from the state where you currently live without our written permission. If there is a certificate of title showing title to any collateral, you will file any amendment or other documentation required to protect our security interest.

099009                                page 2 of 8                                07/04

**Our Right to Take Action.** If you do not:

1. Take care of the collateral as required under "Care of the Collateral";
2. Keep the collateral insured as we ask as required under "Insurance";
3. Cooperate with us in making sure that necessary financing statements or certificate of title documents are filed; or
4. Fulfill any other promise you have made in this Agreement,

then we may (if we choose) take the necessary steps to protect our interest in the collateral. For example, we may pay taxes, insure the collateral, file financing statements, or make repairs. If we advance any money, you agree to pay us the amount advanced with interest at the same annual interest rate you pay on this Agreement (as that annual interest rate may change from time to time), but not more than the maximum rate allowed by law.

**Special Rules for Securities.** If any of the collateral consists of stocks, bonds or other types of securities:

1. You will endorse those securities at our request so that we can transfer them. If we ask you to, you will also deliver to us anything that you receive from the issuer of those securities. For example, you will deliver any money, notices and additional securities that you receive from the issuer because you own the securities. Whatever you deliver to us will be collateral subject to this Agreement.
2. We may notify the issuers of those securities of our security interest. We may require the issuers to make any payments to us directly, and we may sue the issuers if they do not pay as required.
3. If your securities are issued by or held by another party, such as your broker, you will obtain from such party a signed control agreement we may require to perfect our security interest in the collateral.

## ADDITIONAL TERMS OF YOUR LOAN

☐ **Administrative Fee.** You agree to pay us an administrative fee of $25. This fee is included in the "principal." If you prepay this Agreement in full, you will not receive a refund of any part of the administrative fee.

**Financial Information.** Whenever we ask, you agree to furnish us with current information about the value of any property you have given us as security. You agree that we may obtain and use credit information about you from others as described in the loan application. You agree that we may report information about your credit to others at any time. See TCF's Privacy Policy for information on your right to direct us not to share certain information.

**Other Promises:** You will:

1. Provide us with financing statements at our request;
2. Assist us and do whatever is necessary to perfect any security interest in the collateral or real estate securing this Agreement;
3. Make sure our security interest is properly shown on the certificate of title, if the collateral includes a motor vehicle or other property represented by a certificate of title;
4. Notify us immediately in writing if you change your address; and
5. Not use the collateral or real estate securing this Agreement for any unlawful purposes

**Setoff.** To protect us if you default under this Agreement, and any amendment, extension, or renewal of this Agreement, we may use any of your property in our possession or control to pay this Agreement. This includes any money you have on deposit with us. We may use this property or money without giving you any notice. We will not be liable for the dishonor of any check, automatic payment, withdrawal request or other payment instrument if the dishonor occurs because we used any of your property in our possession or control to satisfy this Agreement. You will assume the liability and relieve us of all responsibility for any claim that occurs if we set off amounts due under this Agreement against one or more of your accounts.

**Changes, Waivers and Delay in Enforcement.** This Agreement cannot be changed unless we agree in writing. We can delay enforcement of our rights under this Agreement without losing them. For example, we may accept late payments from you without waiving our right to require that future payments be made on time. If we release any of you from this Agreement, the rest of you will not be released. If we exchange or release any collateral or real estate that secures this Agreement, you will not be released. We do not have to use our legal remedies against one of you before we use our legal remedies against any of you. You agree to give up your rights to require us to: (1) demand payment of amounts due (presentment); (2) obtain official certification of nonpayment (protest); (3) notify you that amounts due have not been paid (notice of dishonor); or (4) give you any other notice except as required in this Agreement.

**Application of Payments.** We may apply any payments you make first to late charges, returned payment charges, and any other charges you owe us, then to any interest you owe, then to the principal (including any points and other charges you have financed).

**Notice Regarding TCF Command Protection Loan Provision Purchases.** If you purchase the TCF Command Protection Loan provision, you understand that we or an affiliate of ours may receive something of value from the purchase.

**Tax Deductibility.** You should consult a tax advisor regarding the deductibility of interest and charges for this Agreement.

**Default.** You will be in default if:

1. You do not pay this Agreement promptly when it is due;
2. You fail to perform any other part of this Agreement;
3. You fail to perform any part of any other agreement you have with us, whether or not related to this Agreement;
4. You make a false or misleading statement to us in any credit application, whether or not related to this Agreement;
5. You or any guarantor of this Agreement files a petition under the bankruptcy laws, or someone files a bankruptcy petition against you or any guarantor of this Agreement;
6. You die or any guarantor of this Agreement dies (our rights in this instance may be limited as set out in Title 12 of the Code of the Federal Regulations Section 591.5);
7. Someone tries to take the real estate or collateral that secures this Agreement from you by legal proceedings;
8. The value of any real estate or collateral that secures this Agreement goes down substantially;
9. We feel in good faith that you are not able or willing to live up to the terms of this Agreement; or
10. You sell or give anyone else an interest in any of the collateral that is personal property without written permission from us.

**Costs and Attorneys' Fees.** To the extent not prohibited by law, you will pay all of our reasonable costs and attorneys' fees in collections, foreclosures, and any other legal actions if you are in default. To the extent permitted by the United States Bankruptcy Code, you will also pay the reasonable attorneys' fees and costs we are charged to collect this debt as awarded by any court under the Bankruptcy Code.

<u>Our Rights</u>  If you are in default, we may do any one or more of the following.

1.  Require you to pay everything you owe on this Agreement at once.  We do not have to give you notice or demand unless required by law or by your mortgage if this Agreement is secured by real estate.

2.  We may exercise our rights as a secured party under the Uniform Commercial Code.  This means that we may take the collateral that secures this Agreement from you if we do so peacefully and the law allows it.  We may also sell the collateral that secures this Agreement.  If we sell the collateral, we can apply the money, after deducting the costs of sale, to any part of your debt with us that we wish.  We do not have to give you any notice or demand before we repossess if notice or demand is not required by law. You will make the collateral that secures this Agreement available to us to repossess. We may go onto your property to repossess the collateral as provided in this Agreement, but we may not breach the peace or break the law.

3.  Exercise any rights we have under any federal or state law or other agreement you have with us.

4.  Demand security (collateral), additional security, or additional parties to be obligated to pay this Agreement as a condition for not using any other remedy.

If we choose any one of these remedies, we do not give up our right to use any other remedy later.  Foreclosure or repossession and sale of collateral securing this Agreement under the Uniform Commercial Code is governed by the law of Minnesota.

<u>Agreement Binding.</u>  You understand that this Agreement is binding on your heirs and your legal representatives.  This Agreement, the Arbitration Agreement, and any Mortgage are the final and complete expression of the agreement between you and us.

<u>More Than One Signer.</u>  Whether you sign this Agreement as an individual or as one of a group, you are each fully responsible for all the obligations owed to us.

<u>Severability.</u>  If any provision of this Agreement is found to be unenforceable, all other provisions will remain in full force and effect.

<u>Governing Law.</u>  This Agreement and any actions arising out of this Agreement, including, but not limited to, provisions related to loan charges, are governed by federal law and, to the extent not preempted by federal law, by the substantive law of Minnesota

---

☐ If this box is checked, the following notice applies:

**NOTICE**
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

**CREDIT INFORMATION**

If at any time you feel that any information we may furnish to any consumer reporting agency is inaccurate, you can send us written notice of the inaccurate information to Customer Service, Mail Code 002-01-P, 101 E 5th Street, Suite 101, St. Paul, MN 55101. Please include the account number(s), a description of the inaccurate information, and the nature of the inaccuracy of the information.

---

**GUARANTEE**

By signing below, you agree to pay this Agreement if the Borrower or Co-Borrower does not.  You will pay this Agreement when it becomes due, whether or not we have made any effort to collect this Agreement from any Borrower or Co-Borrower or to repossess or foreclose any real estate or collateral that secures this Agreement. You will continue to be responsible even if we exchange or release any real estate or collateral that secures this Agreement, agree to any changes in this Agreement (including an extension of the required time for payment), or release any other person from responsibility for this Agreement.  You will pay our attorneys' fees to collect this guarantee, unless prohibited by law.  By signing below, you acknowledge you received and agree to the separate arbitration agreement entered into by Borrower and Co-Borrower on this date.

Guarantor

---

**COLLATERAL OWNER**

By signing below as collateral owner, you give us a security interest in the collateral securing this Agreement or a separate mortgage on real estate to protect us if the Borrower or Co-Borrower defaults under this Agreement.  If this Agreement is secured by collateral, you agree to the terms of the Security Agreement section of this Agreement.  You will have no personal obligation to repay this Agreement, but you agree that we have all of the rights in the collateral securing this Agreement as provided by this Agreement or if secured by real estate as provided in this Agreement and the mortgage.  By signing below, you acknowledge you received and agree to the separate arbitration agreement entered into by Borrower and Co-Borrower on this date.

Collateral Owner

Collateral Owner

---

## NOTICE REGARDING USE OF CREDIT REPORT

If your Agreement is secured by your residence or other residential real estate, the interest rate and amount of this Agreement are based in whole or in part on information obtained from the credit bureau below. If your Agreement is unsecured, the amount of this Agreement is based in whole or in part on information obtained from the credit bureau below.

☐ TransUnion                ☐ Experian                      ☒ Equifax
  2 Baldwin Place             701 Experian Parkway            PO Box 105873
  P.O. Box 1000               PO Box 2002                     Atlanta, GA 30348
  Chester, PA 19022           Allen, TX 75013-0036            (800) 685-1111
  (800) 888-4213              (888) 397-3742
                             www.experian.com/reportaccess

☐ Other: _____
         _____
         _____

You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons as to how we determined your interest rate or the amount of your loan. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

By initialing, you acknowledge receipt of this notice on __08/23/2004__   (date)

_____          _____
GINA L TONER
Borrower                                   Co-Borrower

089009          page 5 of 8          07/04

# TCF® COMMAND PROTECTION LOAN PROVISION

If you elect to purchase the TCF Command Protection Loan provision, these terms and conditions are included as part of the terms of your Agreement.

<u>Accidental Death Waiver:</u> For the monthly fee shown on page 8, TCF will waive your indebtedness (up to $50,000) owing under the Agreement upon death resulting directly, and independently of all other causes, from an accident. An accident is an unplanned event, unexpected and undesigned, which occurs suddenly and at a definite place. The monthly fee will not be waived (it will be due) during any deferment period for the deferment events described below. A TCF Command Protection Loan provision is not available on unsecured or non-real estate secured loans or on real estate secured loans with an original principal amount of $10,000 or less.

We agree to waive the entire remaining outstanding balance you owe to us under this Agreement as of the date of your accidental death, up to a maximum amount of $50,000 (this is the maximum waiver under this provision, even if you purchase a joint provision for both borrower and co-borrower), in the event of your accidental death subject to the limitations stated in this TCF Command Protection Loan provision. The TCF Command Protection Loan provision is also subject to the following exclusions:

· Death resulting from disease, sickness, bodily or mental infirmity, or medical or surgical treatment of same;
· Death resulting from suicide while sane or insane;
· Death resulting from intentionally self-inflicted bodily injury while sane or insane; or
· Death resulting from war or act of war, whether declared or undeclared.

Waiver means that the indebtedness is no longer due to TCF. No payments are made to you or any other party. You, your estate, or heirs may incur a federal, state and/or local income tax as a result of the waiver of indebtedness. You should consult your tax advisor.

<u>Disability, Involuntary Unemployment, Family Leave and Military Leave Deferment:</u> In addition, for no additional charge, TCF will defer (but not waive) scheduled monthly payments during periods of total disability, [1] involuntary unemployment [2], family leave [3] or military leave [4]("deferment events") subject to the limitations below. Deferment means that once approved and during an approved period(s) of deferment, you do not need to make your scheduled monthly payment(s). The monthly fee for the TCF Command Protection Loan provision will be added to your scheduled monthly payments and will not be waived (will be due) during deferment periods. This is a payment deferral feature only-interest will continue to accrue according to this Agreement on the unpaid Principal Balance and the Principal Balance is not reduced. Because of the deferral, you will have a remaining balance due on your scheduled final due date. After the scheduled final due date, you will continue to make monthly payments to us until your debt is paid in full. The amount of each monthly payment will be equal to the amount of your last regularly scheduled monthly payment. Deferrals will not cure any prior payment or other delinquency. If any prior delinquency is not cured, we will continue to pursue our remedies based on the prior delinquency and the total outstanding balance, including any payments which have been deferred, may be accelerated. If you pay off your loan before the scheduled final due date, and you have received a deferment of any monthly payment(s), your payoff balance will include the interest that accrued during the deferment period(s) and the full unpaid amounts due on your loan including the full unpaid Principal Balance.

Here is an example of how the deferral works. Assume your regular monthly payment was $449.41, your original loan balance was $50,000, you had a 15-year loan at a 7% annual interest rate with an interest begin date of January 1, 2000, a first payment date of February 1, 2000, and a final scheduled payment date of January 1, 2015. If you were ill and could not work for five months beginning January 15, 2002, and your Principal Balance was then $45,771.30, and a deferment period of 5 months was approved, your scheduled monthly payments for February, March, April, May and June would be deferred. Interest would continue to accrue on your Principal Balance and the Principal Balance of $45,771.30 would stay the same if you did not make any principal payments during the deferral. After January 1, 2015 (your original scheduled final due date), you will continue to make monthly payments, in the same amount as your last regularly scheduled monthly payment, until your loan is paid in full. Assuming that after the deferral in this example you resumed regular and timely monthly payments in July 2002, you would have to make eight more payments of $449.41 beginning with the January 1, 2015 payment, and a final payment of $417.88 on September 1, 2015 to pay your loan in full.

<u>Conditions and Exclusions:</u> Normal pregnancy or self-inflicted injury is not a disability. You must be disabled at least 14 consecutive days to qualify for a disability deferment. You must be completely unemployed for at least 30 consecutive days (if you are employed part-time, you will not qualify) to qualify for a deferment for involuntary unemployment. You must not have been notified, either orally or in writing, of pending layoff, employment termination, strike or lockout prior to the date of this Agreement to qualify for a deferment for involuntary unemployment. If you qualify for a deferment, you cannot qualify for another deferment for 90 days after the end of the prior deferment event. The maximum total number of months of deferments under this provision is 12 months for disability, 12 months for involuntary unemployment, 6 months for family leave and 6 months for military leave counting all periods of deferment that might occur during the term of this Agreement. The maximum total number of months of deferment during the term of this Agreement for all deferment events counting all periods of deferment that might occur during the term is 24 months.

**If you have a preexisting condition, we will not defer any payment if you become disabled and the disability occurs within six months after the date of this Agreement and is caused or substantially contributed to by an illness, injury or condition which required medical advice, diagnosis or treatment within six months prior to the date of this Agreement.**

---

[1] That is, you must be unable to perform the duties of your occupation for wage or profit because of sickness or accidental injury to qualify for disability deferment.
[2] Involuntary unemployment includes involuntary layoff, termination by employer, and inability to work as a result of a general strike or unionized labor dispute.
[3] Family leave is defined in the Federal Family and Medical Leave Act of 1993.
[4] Military leave is being called to active military duty after the date of this Agreement. If you are on active military duty on the date of this Agreement, military leave deferment is not available unless you leave active military duty and are called back to active military duty.

You may initiate a waiver or deferment request by calling 800-445-8192 or such other number if we notify you in writing of a different number. Until your request is approved, you must continue to make any scheduled payments which are due. Scheduled payments prior to approval of your request will not be deferred. All deferments will be applied to scheduled payments after the date of our approval of your request. The number of monthly payments approved for deferment is determined by counting the number of full or partial months after the waiting period, if any, is met. Assuming all other requirements are met: for disability requests, a deferral of one monthly payment will be approved for periods of total disability continuing from 14 - 30 days; for Military Leave and Family and Medical Leave Deferments, a deferral of one monthly payment will be approved for a deferment event continuing from 1 - 30 days; and for all types of deferment events, a deferral of two monthly payments will be approved for deferment event periods from 31 - 60 days, a deferral of three monthly payments will be approved for deferment event periods continuing from 61 - 90 days, and so forth (subject to the maximum number of monthly payments eligible for deferment by type and total described in the Conditions and Exclusions section above).

Notice of your request must be furnished within 180 days after death, disability, involuntary unemployment, family leave or military leave occurs, and you must return any forms and provide any information we request within 60 days of our request. We require written proof of accidental death (such as a certified copy of a death certificate). We require written proof of disability, involuntary unemployment, family leave or military leave for the entire period of the deferment event. We reserve the right to require you to give us proof of your continuing disability, involuntary unemployment, family leave or military leave at reasonable intervals in order to justify the continuance of the deferment. We will require information for each type of request you make.

Information we request from you will include, but is not limited to, the following: (A) If requesting accidental death waiver, we must be furnished with a certified copy of the death certificate; (B) If requesting deferment due to disability, you will be sent an information request form within 15 days after your notice is given (proof of disability must include: (1) the date and the cause of the total disability; and (2) signature of treating physician); (C) If requesting deferment due to a period of involuntary unemployment, you must qualify for unemployment benefits under state unemployment law and register to work with a state employment office or a recognized employment agency within fifteen (15) days after the last day employed and remain so registered during the request period if the unemployment occurred as a result of either layoff or employer termination (in the event registration occurs after the first fifteen (15) days of unemployment, you will not be eligible for payment deferment for the time in which you were not registered, but requests will be processed retroactively to the date of registration); (D) If requesting deferment due to family leave, we must be furnished with a copy of your employer's grant of family leave under the Federal Family and Medical Leave Act of 1993 (if your employer is not subject to the Federal Family and Medical Leave Act of 1993 we will require documentation from your employer similar to that required by the Act); and (E) If requesting deferment due to military leave, we must be furnished with a copy of your orders to active duty.

<u>Eligibility for Features (subject to the limitations in this TCF Command Protection Loan provision):</u>

**If you are employed**, (30 hours or more a week and received a form W-2), you are eligible for all five features (accidental death waiver, involuntary unemployment deferment, disability deferment, family leave deferment and military leave deferment) on the date of your Agreement.

**If you are self-employed**, you are eligible for the accidental death waiver, and the disability, family leave and military leave deferment features, but not the involuntary unemployment deferment feature on the date of this Agreement. However, if you become employed (30 hours or more a week and receive a form W-2) at any time during the term of this Agreement, you become eligible for the involuntary unemployment deferment feature for a future period. You may then request to defer your monthly payment obligation for a future period of involuntary unemployment.

**If you are unemployed, disabled, or retired**, you are eligible for the accidental death waiver and military leave deferment features, but not the involuntary unemployment, disability, and family leave deferment features on the date of this Agreement. However, if you become employed (30 hours or more a week and receive a form W-2) at any time during the term of this Agreement, you become eligible for the involuntary unemployment, disability and family leave deferment features for a future period. You may then request to defer your scheduled monthly payment obligation for a future period of involuntary unemployment, for a future period of disability, or for a future period of family leave.

**Refinanced Agreement:** If the TCF Command Protection Loan Provision is purchased as part of this Agreement, and this Agreement refinances an existing TCF loan agreement ("old loan") where a TCF Command Protection Loan Provision or Debt Waiver Provision was purchased, then any deferment event which existed at the time of this Agreement ("preexisting event") will be eligible for deferment under this Agreement without regard to the limitations for prior deferments or preexisting conditions discussed in the Conditions and Exclusions section above. In addition, the total number of permitted monthly payments eligible for deferment for this Agreement by type and for purposes of the maximum total number of deferments for all deferment events are reduced by the number of monthly payments deferred for the preexisting event on the old loan.

**THE FOLLOWING TABLE SUMMARIZES THE ABOVE ELIGIBILITY REQUIREMENTS. THE 'X' REPRESENTS WHICH FEATURE(S) YOU ARE ELIGIBLE TO RECEIVE AT THE DATE OF THIS TCF COMMAND PROTECTION LOAN PROVISION.**

|  | Accidental Death Waiver | Disability Feature | Involuntary Unemployment Feature | Family Leave Feature | Military Leave Feature |
|---|---|---|---|---|---|
| Fully Employed | X | X | X | X | X |
| Self Employed | X | X |  | X | X |
| Unemployed | X |  |  |  | X |
| Disabled | X |  |  |  | X |
| Retired | X |  |  |  | X |



GINA L TONER

Employment Status
I have NOT been notified, either orally or in writing, of pending layoff, employment termination, strike or lockout and my employment status at the present time is:

| Borrower | | Co-Borrower | |
|---|---|---|---|
| ☐ | Fully Employed | ☐ | Fully Employed |
| ☐ | Unemployed | ☐ | Unemployed |
| ☐ | Retired | ☐ | Retired |
| ☐ | Self-employed | ☐ | Self-employed |
| ☐ | Disabled | ☐ | Disabled |

**IF YOU MISSTATE ANY OF THE ABOVE INFORMATION, TCF MAY NOT BE OBLIGATED UNDER THE TCF COMMAND PROTECTION LOAN PROVISION.**
All statements by you for the TCF Command Protection Loan provision have been made to the best of your knowledge and belief. After 2 years from the date of this Agreement, no statement made by you for the TCF Command Protection Loan provision can be used to void the TCF Command Protection Loan provision or to deny any accidental death waiver or payment deferral request unless that statement was made fraudulently. Prior to that time and at any time if a statement was fraudulently made by you, we may use the statements by you to void the TCF Command Protection Loan provision or deny any accidental death waiver or payment deferral request.

---

## TCF COMMAND PROTECTION LOAN PROVISION NOTICE

THE TCF COMMAND PROTECTION LOAN PROVISION IS NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST. ONLY THE BORROWER(S) SHOWN BELOW ARE INCLUDED.

BASED ON THE INFORMATION YOU HAVE PROVIDED TO US, UNLESS THE PROVISION IS CANCELED, THE MONTHLY FEE FOR THE TCF COMMAND PROTECTION LOAN PROVISION IS $25 EACH MONTH OF THE TERM OF THIS AGREEMENT FOR THE BORROWER ($35 EACH MONTH OF THE TERM OF THIS AGREEMENT IF YOU ARE PURCHASING A JOINT PROVISION FOR THE BORROWER AND CO-BORROWER). THE TOTAL COST FOR ONE YEAR WOULD BE $300 FOR THE BORROWER ($420 IF YOU ARE PURCHASING A JOINT PROVISION WITH THE CO-BORROWER). THE MONTHLY FEE WILL BE ADDED TO YOUR SCHEDULED MONTHLY PAYMENT AMOUNT LISTED IN THIS AGREEMENT AND WILL NOT BE INCLUDED IN YOUR LOAN AMOUNT. NO MONTHLY FEES WILL BE DUE FOR THE TCF COMMAND PROTECTION LOAN PROVISION AFTER THE ANNIVERSARY DATE OF YOUR AGREEMENT WHICH OCCURS AFTER YOUR OUTSTANDING BALANCE BECOMES LESS THAN $10,000.

☒ I/We want the TCF Command Protection Loan provision for Borrower only. This will make my initial total monthly payment equal to **$946.81**
☐ I/We want the TCF Command Protection Loan provision for both Borrower and Co-Borrower. This will make my initial total monthly payment equal to _____
☐ I/We decline the TCF Command Protection Loan provision.
☐ I/We understand that the TCF Command Protection Loan provision is not available on unsecured or non-real estate secured loans or on real estate secured loans with an original balance of $10,000 or less and that I/We cannot obtain the TCF Command Protection Loan provision.

**AMOUNT OF ACCIDENTAL DEATH WAIVER:** The amount of the accidental death waiver may be less than the amount you owe under your Agreement. You understand that we will waive only up to a maximum of $50,000 in the event of borrower (or co-borrower's if applicable) accidental death. If your outstanding balance exceeds the amount subject to waiver stated above, the excess will still be due in the event of your accidental death. ☒ You understand that the initial principal amount of this Agreement exceeds this maximum amount. This means that you (or your estate) would owe a balance on this Agreement even if the death waiver is applied to your outstanding balance on today's date.

**CANCELLATION/TERMINATION:** You may cancel the TCF Command Protection Loan provision at any time. We may cancel the TCF Command Protection Loan provision if your loan becomes 150 days delinquent or we charge off your Agreement.

**DEFERRAL FEATURES:** You understand that the disability, involuntary unemployment, family leave and military leave features are deferrals and not waivers. You understand that you will still have to pay the payments deferred, that interest continues to accrue during the deferral period(s), that your term will be extended due to the deferral(s), and that no principal is reduced by the deferral(s). This means that you will have a remaining balance on your scheduled final due date. After the scheduled final due date, you will continue to make monthly payments to us until your debt is paid in full. You understand that the TCF Command Protection Loan provision only allows 12 total months of deferment for disability, 12 total months of deferment for involuntary unemployment, 6 total months of deferment for family leave and 6 total months of deferment for military leave during the term of this Agreement. The 12-month and 6-month limits include all periods of deferment that occur during the term of this Agreement. In addition, you understand the TCF Command Protection Loan provision only allows a total of 24 months of deferment for all deferment events.

**REFUND:** You understand that the monthly fee is paid with each monthly payment for a prior period to which it applies (in arrears). If you prepay your Agreement, you will be charged for days after the date of prepayment. Therefore, no portion of the fee will be refunded in the event you prepay the Agreement in full because no portion of the fee for the TCF Command Protection Loan provision is unearned.

**ELECTION:** By signing below, you state that you DO want the TCF Command Protection Loan provision for the borrower(s) indicated by the box checked above. You also state that you have received a filled-in copy of this form before signing it. You also state that you understand you, your estate, or heirs may incur a federal, state and/or local income tax as a result of the waiver of the indebtedness and that you should consult your tax advisor.

X _Gina L. Toner_ 6/23/04 _____  _____
Borrower GINA L TONER        Date        Co-Borrower        Date

By signing below, you state that you **DO NOT** want, or do not qualify for, the TCF Command Protection Loan provision.

_____  _____  _____  _____
Borrower        Date        Co-Borrower        Date

099009                Page 6 of 8                07/04

**Loan History:** Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

## CHARGES

| Date | Amount Rec'd from Debtor(s) | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | Amount due Late Fees | Amount Due Other Charge* | Description of Other Charge |
|------|------|------|------|------|------|------|
| 9/7/2010 | | $1,283.86 | | $62.94 | | |
| 10/7/2010 | | $1,333.78 | | $65.43 | | |
| 11/7/2010 | | $1,333.78 | | $65.43 | | |
| 11/30/2010 | $2,000.00 | | | | | |
| 11/30/2010 | $617.64 | | | | | |
| 12/7/2010 | | $1,333.78 | | $65.43 | | |
| 1/7/2011 | | $1,333.78 | | $65.43 | | |
| 1/14/2011 | $1,333.78 | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| TOTALS | $3,951.42 | $6,618.98 | $0.00 | $324.66 | $0.00 | |
| | (a) | (b) | (c) | (d) | (e) | |

*Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g.: inspection fee, appraisal fee, insurance, taxes, etc.).

**Note:** Columns (b) + (c) + (d) +(e) - (a) **must equal the current default amount that is claimed in the motion.**

Attorney's fees and filing fee for the motion, if allowed under note and/or mortgage and sought by Movant to resolve motion
Current Default Amount Claimed in Motion    $2,992.22
Escrow Balance (amounts held for payment of taxes, insurance. etc.)    _____
Suspense Account Balance (amount of unapplied payments)    _____



Home     Site Map     Contact Us

# Tax & Property Look Up Information - Quick Info

Home || Information || Property Look Up || Record Look Up || Contact Us

New Property Search

Back to Search Results

Quick Info

Property Information

Taxpayer Name and Address

Value Information

Value History

Structure Description

Sale Information

Special Assessments

Property Tax Payment Information

Property Tax Payment History

2010 Value Notice

2010 Property Tax Statement

2010 Property Tax Statement - Back

2010 Payment Stubs

2010 Payment Stubs - Back

2009 Property Tax Statement

2008 Property Tax Statement/Value Notice

2007 Property Tax Statement/Value Notice

> **Quick Information**

Go to E-Pay (US Bank Browser Requirements)

| | | |
|---|---|---|
| **Property Identification Number (PIN)** | 35.29.22.41.0040 | |
| **Property Address** | 2208 Conway St | |
| **Municipality** | St. Paul | |
| **Watershed** | Metro Watershed | |
| **School District Number** | 625 | |
| **Assessment Date** | **01-02-2009** | **01-02-2010** |
| **Tax Payable Year** | **2010** | **2011** |
| **Total Estimated Market Value** | $142,600 | $131,600 |
| **Total Taxable Market Value** | $142,600 | $131,600 |
| **Total Estimated Land Value** | $58,100 | $46,500 |
| **Total Estimated Building Value** | $84,500 | $85,100 |
| **Property Tax** | $1,698.88 | |
| **Special Assessments** | $305.12 | |
| **Total Property Tax + Special Assessments** | $2,004.00 | |
| **Property Class Description** | Res Hstd | Res Hstd |

| | |
|---|---|
| **Year Built** | 1957 |
| **# of Stories** | 1.00 |
| **Residential Finished SQ Feet/Comm, Ind, Apt Bldg Area** | 936 |
| **Foundation Size** | 936 |

**The Plat or Section / Township / Range and Legal Description listed below may be an abbreviated legal description - Do not use to prepare legal documents**

| | |
|---|---|
| **Section / Township / Range** | 35-29-22 |
| **Plat** | Sun-ray Terrace Addition No 1 |
| **Legal Description** | Lot 3 Blk 3 |

To determine whether your property is Abstract or Torrens, call (651)266-2000

**Most Recent Sale**

| | |
|---|---|
| **Sale Date** | 11-27-2002 |
| **Sale Price** | $168,000 |
| **Certificate of Real Estate Value Number** | 307779 |
| | Qualified Sale |
| **Sale Status** | |
| **Sale Description** | |



Proposed Tax Notice

Minnesota State Form
M1PR

 Database Last Refreshed 02-01-2011 05:04:00
Copyright 2003 Ramsey County
Email: AskPropertyTaxandRecords@co.ramsey.mn.us

Text Only: On | Off | Site Index | Policies and Practices | Contact Us | Home

## Unsworn Affidavit of Service

STATE OF MINNESOTA    )
                      ) ss.
COUNTY OF HENNEPIN    )

      I, Jacquelyn J. LaVaque, declare under penalty of perjury that on  February 2, 2011, I mailed copies of the attached Notice of Hearing and Motion for Relief From Stay, Memorandum of Law in Support of Motion, and proposed Order by first class mail, postage prepaid, to each entity named below at the address stated below for each entity:

Gina L. Toner
2059 Conway Street
St. Paul, MN 55119

Occupant
2208 Conway Street
St. Paul, MN 55119

Matthew M. Tande, Esq.
Prescott & Pearson P.A.
P O Box 120088
New Brighton, MN 55112

U.S. Trustee
1015 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Michael J. Iannacone
8687 Eagle Point Blvd.
Lake Elmo, MN 55042

Citifinancial
PO Box 6931
The Lakes, NV 88901-6931

Executed on:  February 2, 2011

Signed:  Jacquelyn J. LaVaque
Foley & Mansfield, P.L.L.P.
250 Marquette Avenue, Suite 1200
Minneapolis, MN 55401

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.:  11-30151 GFK |
| Gina L. Toner, | |
| Debtor. | Chapter 7 |

## ORDER GRANTING RELIEF FROM STAY

This case is before the Court on the motion of TCF National Bank ("Movant") seeking relief from the automatic stay of Section 362(a) of the Bankruptcy Code.  Based upon the files and records,

IT IS HEREBY ORDERED that the automatic stay of Sections 362(a) and 1301 of the Bankruptcy Code are immediately terminated as to Movant, and Movant is authorized to enforce its security interest as provided by contract and state law in the subject:

Lot 3, Block 3, Sun-Ray Terrace Addition No.1, Ramsey County, Minnesota,  and commonly known as 2208 Conway Street, St. Paul, Minnesota 55119.

Notwithstanding Fed. R. Bankr. 4001(a)(3), this order is effective immediately.

Dated: _____

_____
Gregory F. Kishel
United States Bankruptcy Judge